Case number 24-1241 Purgatory Recreation I v. United States. Good morning, may it please the court. I'm Steve Bouchong and I'm here representing the appellants in this case. I will try my best to save a couple minutes for rebuttal, um, but I'll go ahead and jump in. Excuse me. So this dispute involved the purgatory resource water rights on East Fork of Hermosa Creek. So water rights are separate, distinct, invaluable property rights in Colorado. And what they do is they allow the owner of that water right the ability to divert water and put it to a beneficial use, such as snowmaking in this case. So a couple of the key facts that were cited in the complaint. In the 1991 exchange, the Forest Service acquired part of Purgatory's predecessors land in that watershed, but only one of the water rights. It didn't acquire the rest of them. And the U.S. knew about the rest of those water rights. In fact, three of them were decreed on the very land that the Forest Service acquired. And second point in the facts, the Forest Service has always recognized the validity of these water rights. It had the ability in the Colorado water courts to oppose, and it either chose not to, or in one case it did oppose and it stipulated to the water right in the Colorado courts. And in 2003, the Forest Service worked with Purgatory to develop a water plan, and that plan specifically relied on these water rights. Also in 2008, the Forest Service worked again with Purgatory to develop new ski trails, new snowmaking that again relied on these water rights. Well, even though the statute of limitations had arguably expired, I suppose that the Forest Service could have said, that's the defense, we're going to choose not to assert it. They never said that. There's nothing in the record on that. Is that correct? No. What happened was precisely, Your Honor, is starting in the early 2000s, Purgatory filed an application for a special use permit, and the Forest Service came back and said, well, we need to do some environmental analysis. And then that was done. And then in 2003, another permit application was filed, and the Forest Service came back and said, well, we have concerns with the trout back in the creek. So then at that point, the Purgatory and the Forest Service started working together and had in-person meetings and communications to try to develop what the terms and conditions might look like on that permit. And then Purgatory submitted another application for a special use permit that again, the Forest Service said, well, not enough information. We need more information. And in that letter, the Forest Service even said, we're working together on developing a well testing protocol that will work for both sides. So the special use permit was so your client could do what? I need a special use permit to do what? Right. So the special use permits, Your Honor, are required to go back and access, even if you have an access easement, you still have to file for a special use permit to go back. And in this case, it was to drill a test well to be able to begin developing these water rights that had already been decreed and are already vested property rights in Colorado. But that's only because you're going over land that now the National Forest Service owned. You wouldn't have needed that if the National Forest Service didn't own that land. Isn't that correct? That's right. When that was private land, you would not need a Forest Service permit. One of the things I'm just not completely clear about, why weren't there, the record probably says this and I just missed it, but why didn't Purgatory find alternative access that was not over National Forest Service land? Well, those water rights were decreed, the three in particular were decreed on private land. And that private land was then exchanged with the Forest Service. And under Colorado law and federal law, there would be an implied easement necessity to access the water rights that were not. That wasn't my answer. My question is, why didn't this assume that Purgatory said, well, we think we have rights over the Forest Service land, but we may lose that. Don't we have another way to access that water? Was there anything in the record about whether they could have drilled wells and gotten the groundwater aquifer on a different location or access the direct stream off of National Forest Service land? I mean, I'm not sure it decides this case, but I'm just curious if there were alternatives available. So, that was actually looked at. I'm not sure how much of it was actually pled in the complaint because that's what we have. But those were looked at. One thing that was pled in the complaint was in response to the Forest Service, there was an effort to go up the mountain and drill a deeper well, all the way down to the same aquifer and that was unsuccessful. The other thing too is that, also answer your initial question. So, this is all now Forest Service land. So, there's no way to access the decreed points of diversion for those water rights without going on through Forest Service property. Right. So, one of your problems is that in Western water law, you have to take your water at a certain point unless you get the state to approve a different point of diversion. That is correct. And where you are right now, your point of diversion is located on the Forest Service. That is correct, especially after the land exchange. Some of the water rights were originally decreed on Forest Service land. Some were decreed on private land, but now they're all on Forest Service. Did anyone from the Forest Service ever specifically tell you they disagreed that you had an easement? Do you have any communications, anything from the Forest Service that we can look at where they would have disputed your easement? Not that I recall until the Forest Service came in in 2010. So, after all of these meetings and all these efforts, the Forest Service came in to a water court proceeding and said, okay, we're not going to allow you to access your water right. That is the first time there was a clear definitive statement that they were excluding the access that the parties have been working to try and develop terms and conditions. Isn't that apparent that they were saying, unless and until we were to grant you a sup, you obviously can't come across this land. That's our power over you. And the reason we're exercising it is because we're not sure that we want to give up that water rights. I think they were consistent throughout that they had the power still to keep you from entering their land to get these water rights. Your Honor, respectfully, one thing I would point out, so the test that this court has applied when the quiet title claim involves an easement instead of fee title is called the peaceable coexistence standard, right? And it's been applied a couple times, Kane County and the San Juan County cases. In Kane County, they said the determinative issue is whether the government's actions, and I quote, amounted to a claim of exclusive control or whether it permitted the United States ownership interests and the plaintiffs right away to peaceably coexist. The peaceable coexistence was always that purgatory didn't have access to that property. That was the status quo. It was peaceable. At no point was purgatory taking water out of that land over forest service, over that forest service land as the peaceable status quo. Well, Your Honor, the water rights are conditional water rights. To perfect them, you have to go in and divert them and put them to use. That's what purgatory attempted to do after the exchange occurred, right? And under Colorado law, as well as federal law, when there is a conveyance of land and a certain property interest is not conveyed, the law implies an easement by necessity to access those water rights. And so I don't think anyone disputes that, but I think maybe the question would be, at what point was it apparent to your client that the forest service was not going to let you access your easement? I mean, at the point where that became clear, whichever one it was, I mean, you're on notice that you have to do something. Would you agree with that? Yes. Okay. And prior to 2010, purgatory, and this is what's been pled in the complaint, purgatory and the forest service were working together to develop protocol on how the water rights could be utilized and accessed without impacting the trout. But what you were on notice almost right from the beginning was that the forest service was saying what was exercising the right that you cannot come on this land to access that water. We have the power to preclude you from access and we are doing that until and unless there's a change in the circumstances, e.g. that we come up with a plan with you. And until that happens, yes, we are exercising our to preclude you from the land. That's obvious because they never went on the land and started drilling. They knew they couldn't. Well, one thing too that I believe we set forth in the brief, the law that both parties had to abide by was that even if purgatory has a common law easement to access its water rights, it still has to apply for a special use permit. And the United States has the ability to regulate the access through that special use permit. So that's the law that parties were working within. So, yes, in the sense that purgatory had to apply, that's what the law requires. And the fact that the forest service was regulating it, they have the ability to do that. They just can't regulate it out of existence. I guess your position is that your easement is still private property, but it can be regulated to some degree by the forest service. Yes. And we cited the banks cases and other cases that actually give the forest service that authority. And that's what the parties were working to do. And I think another important factual component of that issue is that it wasn't just the forest service that wanted to protect the trout. Purgatory had already committed to doing that in its water. It had to. So they were both trying to accomplish the same goal. Purgatory had also already voluntarily subordinated its senior water right to a decreed in-stream flow water right in Colorado. And that was done before the exchange. And then purgatory also got rid of all of its vested property rights in reservoirs in that watershed. All of that was done to protect the trout. So the parties were working together to accomplish the same goal, working on the terms and conditions, how can we do this, drill down deeper, move the wells around. What are the different options we have to allow for terms and conditions on the permit so you can use your water rights. But what was not done, what was not done was asking the forest service to grant an extension, a waiver or an extension of the statute of limitations, agreeing not to assert it. That is not in the pleadings, but actually that was discussed. Well, we got to limit ourselves to the pleadings. Yeah. Right. And so the complaint was initiated less than 12 years after the 2010 statement where the forest service said, and I think the important point too, is the forest service supervisor, the longtime one testified under oath that the forest service position evolved and changed until they decided in 2010 when they opposed that water court case, that they weren't going to allow the access. And I think that's important in our view. That's like an admission against interest. Councilor, I think Judge Ebel, I mean, Judge Matheson's asking a question. Judge Ebel was just making the point that we're working off the pleadings, we're working off the complaint. And your complaint sets forth two claims, one under the Quiet Title Act and the other for declaratory release. And my question goes to the relationship between those two claims, um, why, you have reference in the complaint to the FLIPMA statute, the ANILCA statute, and takings. And my question is why aren't those claims, if they are claims, inextricably linked to the Quiet Title Act claim? In other words, if you lose on the Quiet Title Act claim because it's untimely, why don't you lose on everything? Your Honor, so under the Declaratory Judgment Act claim, clearly it was pled broadly and probably does have some overlap with the Quiet Title Act. I think two of the claims that we've really pressed upon, uh, both in district court and here is that two of them were really completely separate because they involved just the water rights, looking at the required forfeiture of a water right for in-stream flows, which is outside of the Forest Service's ability under federal law, right? And contrary to the McCarran Amendment that subjects the Forest Service to state law, that was one, for example, of the specifically requested release for declaratory judgment. But you look at ANILCA, it does not provide relief. It has to be implied. There's nothing in there about specifically, here's the, here's the relief. And we, it seems to me that the relief is the Quiet Title Action and the U.S. Supreme, in the Ninth Circuit, rather, in, in, uh, in Ray, U.S., which an ambiguous site, but it's 67 F 4th 1006, uh, concluded that the Quiet Title Action is the exclusive means by which a plaintiff can claim an easement in land. That is, this is an easement. It's not an easement by adverse possession. They're claiming an easement, uh, to regulation. And I suppose maybe through implied conduct, uh, but it still isn't, ultimately it comes down to they are claiming an easement and that's a property right, which is always resolved by Quiet Title Actions. Yes. And we do understand that the, the ANILCA and FLIPMA, part of the reason why they were applicable under the Quiet Title Act was we were claiming easements also under those statutes and Jenks links those statutes with. So it's, it's just multiple ways of claiming you have an easement, but once you claim an easement for any basis, it's got to get resolved as a property right under the Quiet Title Action. I agree with that, but under the declaratory judgment claims that were made, some of those claims are very specific to the water rights. And one of the problems there is the Quiet Title Act does not allow you to seek a Quiet Title claim of relief for water rights. For what? For water rights. The Quiet Title Act excludes water rights from its purview. I mean, now your, your water right, your claim as to the water rights themselves, that's more of a state court or state administrative agency type of claim though, isn't it? I mean, this, how is, how is this court going to declare your rights to a stream? I mean, that's something we generally don't do. That, that is correct, but those rights already exist. They've already been decreed. They're vested property rights. And what do you, what do you need from us? I'm sorry, Judge Matheson, go ahead. Well, I was asking the same thing, Judge Carson. It, it seems to me that no one's contesting that you have the water rights. So why do you need a declaration from this court? Are we just back to the easement? We're back to the easement on most of it, but the couple of issues that we specifically identify for declaratory relief that pertain only to the water rights is a forfeiture of the water rights for in-stream flows, which the Forest Service does not have the legal right to do, and they're circumventing their, their, the law on that. And they are, so we're challenging the forfeiture of the water rights for in-stream flows. And that also ends up resulting in a taking of the property, if that were to be allowed. So we were also raised a taking claim under... Can I just ask you about the takings claim? Are you, are you saying that the takings claim has occurred? When, when did the taking occur or has it occurred? That is a great question because the 2010 statement by the Forest Service could be construed to initiate the taking when they said we're not going to allow you to access your water rights. However, after that... But they're not taking your water rights. They worked with Purgatory to try to develop terms and conditions on that. But you agree that they're not taking your water rights. So the question is, if it's taking, you got to have something that you're taking. It has to be a right. It's not a water right. What is it? You're saying it's an easement right. That's what our case is all about. Do you have an easement right? You didn't have an easement declared. You didn't have an easement reserve. You're not really claiming it by adverse possession. So do you have a right, an easement right? It's not a water right we're addressing here at all. Well, there's an easement right by necessity that was asserted. But we also asserted that also the vested property right and water rights, that what the Forest Service, the effect of what the Forest Service is trying to do is unlawful. And that's an inverse condemnation claim. Like regular, like a regulatory right. But are they using your water rights? They are not using them. They don't claim to own them. But by requiring the forfeiture of those rights to the stream for in-stream flows, they are prohibiting purgatory from using their water. Well, you have a remedy for that in the claims court though, don't you? We raised it here for declaratory relief because we believe what the Forest Service is doing will result in a taking. But yes, if that is allowed to occur, we would have to go to the claims court. The problem is, is it would be similar to an uncompensable damage because the resort is relying on these water rights, right? Or you could probably also, couldn't you, go to the water court and somehow make a statement there that you are asserting the rights, but you're denied the right to physically claim it, but you are continuing to assert them and you want your rights to be preserved. I mean... We are in water court in a case that's been stayed. To allow these issues to come forward in federal court... You do have that other option. You don't know how it's going to turn out, but it is a venue. But I don't know if the water court honestly would have jurisdiction over federal actions. No, but they might have jurisdiction to declare that about whether you have lost your water rights as a result of that or not. That is the Forest Service's position in that case. But there is a forum to resolve that, and that's the state water right court. Right, but if there's no access to the decreed point of diversion, and there's no other way to get to those water rights, then those actions are going to result in a potentially loss of the water rights. That's not a question before us, nor within our expertise. That'll have to be by the before federal court was because puritory claims in easement to access this water rights. Okay, well thank you counsel. You're out of time. Judge Matheson, do you have anything else? Let me just ask you, you just said potential loss of water rights. Doesn't that make your takings, your request for a declaration on takings premature? In other words, it isn't right. In Duke Power and Eastern Enterprises, the U.S. Supreme Court did allow a declaratory judgment act claim for individuals threatened with a taking. And so part of the, if we were going to be here in district court litigating over those access easements, the district court would have all the facts before it to also determine whether that would be, that threatened action would be a taking, even though it hasn't occurred yet. Okay, thank you counsel. Thank you. Good morning, your honor. May it please the courts, Mayor Raunchy for the United States. I'd first like to draw the court's attention to the plaintiff's complaint at paragraph 62 and that page one of their reply brief where they confirm that one of the reasons they applied for a special use permit was for the specific reason of getting access to their conditional water right. So one of the reasons they actually sought the permit was for access. Now they applied. Let me stop you for a minute, but they have to, right? So even, well first let me ask you this, do you disagree that they have an easement or that they at one time had an easement? We do not agree that they had an easement. That's never, that was never, and you can read the complaint, it was never asserted to the Forest Service that we have an easement for a service and we're applying because we simply have to. That was never stated. The Forest Service never said, we know you have an easement. But you've never, I mean until all this, you never said they don't either. Like during this, if they had one, you would agree that they would still have conditions placed on their access. They would have conditions, but what their claim is they have an actual right in the land. That's different from as a part of a permit we get access. They were coming to the Forest Service to get access and indeed they never accessed the land as they concede in their reply brief at page seven. Well let me ask you this, what would have happened if they would have driven a truck down to the point of diversion and started drilling a well? In terms of what would the Forest Service have done because they had access to the land? You would have noticed them for trespass. Most likely simply because the Forest Service knew of no existence of an easement. Right, I mean so they, I mean a lot of times this gets circular because you say, well they never exercised their rights. They came to us to ask if they could get on. Well of course they did because if they just went down there, you would have charged them a trespass and then you'd have had litigation over whether they were trespassing. Well and the fact that there is an issue as to who has a right over the land simply illustrates that there was a quiet, there was a trigger, there was a quiet title dispute that needed to be resolved. If plaintiff's predecessors believed that they had a reservation in this land and then at any point the Forest Service did anything, like for example in your hypothetical, said there was a any sort of adverse interest in this alleged right in the property, then that was, it was incumbent upon plaintiffs to then bring a quiet title action to settle this dispute, to determine who has the right over the specific parcel of land. So I take, I mean what I understand your argument to be is, at least for me, the take-home point is that we need to keep in mind that we're not asked to decide access rights or water rights, or even particular, I should have said water rights, or particularly even access rights. We're asked simply, has the statute of limitations run? That's it. That's absolutely right, your honor. A lot of this, all this other stuff we can say isn't before us. Indeed, indeed, and it's easy to get caught up in who has access, those sorts of things. It's simply, when did plaintiff's predecessor or plaintiffs realize they know that there was a potential challenge? Exactly, exactly. So most fundamentally. But those things, but those things matter to determining when they had notice, because if their position is, we had an easement and you knew about it, and your position is, we never knew about it, and we were hostily challenging your possession, at some point, you know, back and forth, you know, when they were filing their special use permit, the responses were things like, we don't have enough resources, we're sending it back because it's insufficient, we need information, you didn't submit enough information. Those are like four letters that went back and forth there. But never in there was something that said, you don't have access, you know, we're never going to let you on. It was, you didn't give us enough information, we don't know. I mean, so the facts, I mean, even though we're not, don't have to necessarily decide title, the communications matter, don't they, for us to determine when they were on notice that they had to file. First, the fact that the Forest Service. Answer that for me first, the communications matter for us to determine when they were on notice. The, well actually, no, because in 1991, this was all established when the warranty deed was executed. Would you agree with me that basically all of the implied water infrastructure rights in Western water law were implied? I mean, ditches that run across Forest Service land, diversions that are on public land, where the Forest Service or the federal government owns the land, but there's nothing in writing as to who owns what. But there have been held to be implied rights to access those ditches, access those diversions. I can't speak to the general status of things, but indeed there can be implied rights. But when you have a land exchange or the sale of property, which you had in this case, and what we have here is plaintiff's predecessor sold some land. And according to plaintiffs now, they reserved an easement. One would think that if that were the case, that at some point plaintiffs, no, well actually at the time of the execution, plaintiff's predecessor would have said, well, hold on, I'm reserving an easement, and would have recognized the easement and placed that information expressly in the agreement, for example, exchange agreement and the deed. What's important in this case though, is that the deed and the agreement are not silent as to the aspect of reservation. It's not a question of us saying, well, gee, the agreement and the deed were silent. So that means possibly there could have been an implied reservation or not. They weren't silent. To the contrary, they have a specific provision for identifying any interest that was to be reserved by the plaintiff's predecessor. A specific provision that identified any interest such as an implied easement. Well, read that language because does it say such as implied easement? No, but what I'm saying is it speaks to, are there any reservations? That's what both documents say. What does it say? Read the language. It says reservations. It has reservations, which is a category, and it says no. What that means, because it doesn't qualify a certain type of reservation, a hidden reservation, it says reservation. That's properly, fairly construed as any reservation. The answer is no. It's an express no. It's an unqualified no. It's an affirmative no, which is a declaration that there were no reservations. And if indeed this implied easement existed, you would think the plaintiff's predecessor would have thought, well, jeepers, I can't go forward with two documents, one of which is a deed that says there are no reservations. It was incumbent upon the predecessor at that time to either put in that there was a reservation or to know that after 1991, when that deed was recorded, the United States had a fair claim to ownership of all of the land unencumbered by any unnamed or additional or unidentified easement. Does the United States make a claim to the water rights themselves? No, we don't. You do understand, don't you, that water rights are pertinent to a piece of land and that if they're not reserved, they pass under a general warranty deed? I'm not familiar with that circumstance. What I have is what we have before us now. Right. I'm just pointing out that that might be inconsistent with your position. You may be very well right. The best practice would have certainly been to be, we're reserving, draw a plat out and go down there where you can drill your wells, but I'm not sure it's that simple. And I do know a little bit about appurtenance, and I should shut up right now, but you're saying the water right would be pertinent to the land? Yes. Our position is there's no ownership interest, there's no property interest, there's no right in the land, so there's no appurtenance to take place. Right. That wasn't really my point, but I got it. Yeah. Okay. Can I just ask you about what the statute requires for notice, right? Quiet Title Act says the action accrues on the date the plaintiff knew or should have known of the claim of the United States. Are you saying that the predecessors had actual notice of the Forest Service's position, or are you arguing that they should have known what the Forest Service's position was? And in terms of the cases that have applied this statute, what does the law require by way of notice? Can you help us with what the notice requirement is here? So as of 1991, with the recording of the warranty deed, the plaintiff's predecessor had actual notice that the United States had claim of ownership to all of the lands that were an easement by adverse possession can occur later. We know that doesn't happen here because there never was adverse possession. There was no possession at all. So then we'd have to ask, well, what other kinds of easements could there be? There could be an implied easement, but you can't have an implied easement when you haven't expressed preclusion of any other easements. So those are the only two kinds of easements I'm aware of over the land. We're not talking about rights over the water. Are there any other kinds of easements that are potentially at play here other than legally bestowed easements and implies easements or adverse possession easements? And we know that doesn't apply because they never had possession of the access. That's what the complaint's all about. So other than those three kinds of easements, are there any other legal kinds of easements you know about that exist in the law? Not that have been alleged or asserted in the complaint, no, Your Honor. And just touching back on the matter of notice. So we had actual notice in 1991, and plaintiffs themselves have conceded that one obtains constructive notice upon the recording of a deed, for example. And so that occurred in 1991 here. So we had constructive notice as well. And to get to the point of what the standard, and this is a very has accrued. This court has adopted long-standing and well-established principles and standards, three of which are particularly relevant here in this case. Of course, the court knows them. But in this particular case, they bear repeating. The government's asserted interest or claim in the property need not be clear and unambiguous. Indeed, the government's asserted interest could actually be an invalid claim. Second, the plaintiffs cannot wait until the government's assertion of a property interest crystallizes into a well-defined or open disagreement. Where there are circumstances that are less than clear, it's still incumbent upon the plaintiffs to bring their quiet title action in a timely fashion. As long as there is any evidence that would put a reasonable person on notice that there may be a problem, not that there is a problem, but that there may be a problem. Yes, Your Honor. And all that's necessary for triggering the statute of limitations, because as this court has recognized, it's an exceedingly light trigger, is that the claimant knew or should have known that the had asserted or was asserting some adverse interest in the property that's at issue. And indeed, we had that first and foremost in 1991 and at the very latest in 2006. Let me ask you about your deed. I have two questions. The first one's about your 1991 deed position. In all implied easement by necessity cases, there was an unlimited transfer of rights in a warranty deed. And even though it was unlimited, it is implied because they retained a piece of property within the tract that was sold, that there's an implied easement by necessity to get to that property. I'm afraid that your position would swallow up the doctrine of easement by necessity. I guess, tell me if your position would be that because there was something that said no reservations, that somehow makes it different than just a warranty deed that gave everything with no exclusions and one that that distinguished them from the scenario you're suggesting, one of which is the specificity and detail that these two documents, the agreement and the deed include. So we have this exhaustive list, for example, of all of the encumbrances. There were many encumbrances to which the land conveyance was subject. And then we have the language that title was to be free, good title, free of all encumbrances. That's every warranty deed. So you would follow it up with a specific provision that says no. And as I said, it's not reasonable that the predecessor could have sat with two documents, one of which was recorded and said, I'm good with that, knowing very well that for some reason, I'm hiding the fact that I've reserved a right or an easement over the land. Well, I think I think it was almost certainly a mistake as are all easement implied easement by necessity cases. Everybody at the end of those cases wishes they would have put put an easement in there. So I get your position on that. Let me let me ask you another one. And this sort of has to do with the ability of the government to regulate a vested property, right? A vested recognized. I'm not I'm not asking you to admit they have a recognized easement. I want you to assume there is a recognized easement and that we were just to say, no, they were they didn't have notice and that the district court says, yes, they have an easement. Is it your position that they would then be able to go directly to the property, drive on it and start drilling a well? Or would they have to negotiate some kind of negotiate a use for an access? They wouldn't have to negotiate for access, but whatever they were proposing on the lands, they would have to get authority from the Forest Service. Well, one would think they would walk up to the Forest Service and say, here's my either. I haven't implied. And these are the circumstances and implied easement or his piece of paper that says I have. No, I get it. What I'm trying to drill down on are positions such as if they had this right, why were they negotiating with us? I mean, that's that's and that may not be your position, but it seems that it's a fair statement that everybody should be able to agree that just because they have an easement doesn't mean that they can just go do whatever they want with it on the Forest Service land. They have to they have to engage with the Forest Service about how they're going to use it. Yes. OK. And so I mean, they have their argument is that's what they were doing. And so, I mean, I understand your position is different on it than theirs. But I just I want to make sure we're not talking in absolutes on these things. I understand, Your Honor. And with all due respect, if they walked into day one, let's say 2001, when they first started negotiating with the Forest Service, if they had in the back of their minds that they had an easement and the Forest Service denied year one their permit, denied year two, denied three and four, at some point it's reasonable to think plaintiffs or their predecessors would have thought, wait a minute, if they believe that they needed to come to the Forest Service for both access and to be able to use the easement and the Forest Service kept saying no, at some point we're reaching the point at which they said, I think we have a problem. We have a title problem, at least, that we need to file an action and get clear on this. I mean, not to quibble with you, but in 2001, the Forest Service responded with we don't have enough resources to process your client, your application. In 2003, they said we're sending it back because it's insufficient. In 2004, they said we need more information. And in 2006, they said we're sending it back because you didn't submit enough information. And each time that plaintiffs... That's not no. Plaintiffs construed that to mean they couldn't access the property. And indeed, as they say in the reply brief, we have never accessed the property. They believe they needed the Forest Service's approval to access the property, which gave no part of the... I think he still agrees with that. It gave no indication to either party that they were asserting a right to the easement. And if that was at all a question in their minds as to what it was the Forest Service was doing in each of those pieces of correspondence, it was incumbent upon them to bring an action to clarify that. I see I've run way over time. Well, we gave him six minutes, so you're fine. Judge Matheson, do you have anything else you'd like to ask counsel? I'm just curious. Why shouldn't the... Let's say that the exchange agreement 1991 triggered the 12-year period. Why shouldn't the efforts that were made between 2001 and 2007 support equitable tolling of the statute of limitations? Why would they support the equitable tolling of it? Is that your question? Is the statute subject to equitable tolling? I don't believe it is, Your Honor. And that's not been raised as an issue here. I understand. I'm just asking. I don't believe so. I do not believe that it can be told. I could be incorrect on that, but because it wasn't briefed, I'm going to retract that statement. I do not know, Your Honor. Okay. That's fine. I'm just curious. Okay. Thank you, counsel. And you're out of time. And unless... Judge Matheson, do we want to give any rebuttal or are we all good? I'm fine. Okay. I think we're good. This case will be submitted. And, counselor, excuse, thank you both for your excellent arguments.